IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LORNA SILLS KATICA,

    Plaintiff,

  v.

SPECIALIZED LOAN SERVICING,
LLC, and DEUTSCHE BANK
NATIONAL TRUST COMPANY as
trustee for FIRST FRANKLIN
MORTGAGE LOAN TRUST 2006-
FF9, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-FF9,

    Defendants.

CIVIL ACTION FILE NO.

1:15-CV-2957-ODE-WEJ

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint [17].  For the reasons explained below, the undersigned **RECOMMENDS** that said Motion be **GRANTED IN PART and DENIED IN PART.**

## I.   **PROCEDURAL HISTORY**

Plaintiff pro se, Lorna Sills Katica, filed a Verified Complaint [1-1] on July 17, 2015, in the Superior Court of Fulton County, Georgia, alleging that this "is

an action for damages and legal and interlocutory injunctive relief relating to a threatened wrongful foreclosure and sale of residential property presently scheduled for August 4, 2015." (Compl. ¶ 1.) [1] The Complaint names as defendants Specialized Loan Servicing, LLC ("SLS") and Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF9, Mortgage Pass-Through Certificates, Series 2006-FF9 ("Deutsche Bank") (collectively, "defendants").

Defendants removed this action to this Court on August 20, 2015 [1]. On September 4, 2015, plaintiff filed a Motion for Leave to Amend Complaint [7], and an Emergency Motion for Temporary Restraining Order and for Preliminary Injunction [8]. The undersigned granted plaintiff's Motion for Leave to Amend by Order [10] dated September 21, 2015.

Plaintiff filed the First Amended Complaint [11] ("FAC") against the same defendants on September 23, 2015. The FAC asserts claims for: (1) violations of the Dodd-Frank Wall Street Reform Consumer Protection Act of 2010 and 12 C.F.R. § 1024.41 (FAC Count One); violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, as well as 12 C.F.R. §§

---

[1] Plaintiff <u>pro se</u> is also a member of the State Bar of Georgia.

2

1024.35 through 1024.38 (FAC Count Two); violations of Georgia non-judicial foreclosure statutes, O.C.G.A. § 44-14-160 et seq. and O.C.G.A. § 23-2-114 (FAC Count Three); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (FAC Count Four); violations of the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. (FAC Count Six);[2] and breach of contract under Georgia law.  (Id. Count Seven.)  Plaintiff asserts Counts One, Two, and Four against SLS only, and Counts Three, Six, and Seven against both SLS and Deutsche Bank.

The Honorable Orinda D. Evans, Senior United States District Judge, conducted a hearing on plaintiff's Motion for a temporary restraining order and preliminary injunction on September 28, 2015 [14], and entered an Order [15] granting that Motion on that same date.  Defendants were enjoined from selling, transferring, encumbering, or otherwise conveying the property located at 680 Old Ivy Road NE, Atlanta, Georgia, which apparently had been set for a foreclosure sale on October 6, 2015.  (Id. at 1-2.)

Defendants filed the instant Motion and supporting Memorandum [17-1] ("Defs.' Mem.") on October 7, 2015, to which plaintiff filed a Response [22]

_____

[2] The FAC has no Count Five.

("Pl.'s Resp."), and to which defendants filed a Reply [23] ("Defs.' Reply.)  The

Motion is now ripe for resolution.[3]

## II.   STANDARD GOVERNING A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

ruling on a motion to dismiss, all of the factual allegations in the complaint must

be accepted and construed in the light most favorable to the plaintiff.  Young

Apts., Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008); Beck v.

Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998).  A motion to dismiss

does not test the merits of a case, but only requires that "the plaintiff's factual

allegations, when assumed to be true, 'must be enough to raise a right to relief

above the speculative level.'"  Mills v. Foremost Ins. Co., 511 F.3d 1300, 1303

(11th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

---

[3] Defendants state in passing that plaintiff has "thrown together a shotgun complaint."  (Defs.' Mem. 22.)  That passing reference resulted in a very brief rebuttal by plaintiff (see Pl.'s Resp. 3), but an extensive argument in reply by defendants, who assert that the FAC should be dismissed because it is a shotgun pleading.  (See Defs.' Reply 2-3.)  The FAC is not a shotgun pleading.  Moreover, the Court will not consider arguments asserted for the first time in a reply brief. See McCray v. Cellco P'ship, No. 1:10-CV-2821-SCJ, 2011 WL 2893061, at *3 (N.D. Ga. Apr. 8, 2011); Reliance Ins. Co. of Ill., Inc. v. Richfield Hospitality Servs., Inc., 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000).

"'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'--'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.

In deciding a motion to dismiss, "a court limits its consideration to the pleadings and exhibits attached thereto."  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citations omitted).  If matters outside the pleadings are presented for consideration, a court generally must exclude the document or else convert the motion to one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(c).  However, a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim;

5

and (2) undisputed.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)

(explaining that "'[u]ndisputed' in this context means that the authenticity of the

document is not challenged"); see also Brooks v. Blue Cross and Blue Shield of

Florida, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to

certain documents in the complaint and these documents are central to the

plaintiff's claim, then the court may consider the documents part of the pleadings

for purposes of Rule 12(b)(6) dismissal.").  In ruling on a motion to dismiss, a

court may also take judicial notice of public records not attached to the Complaint

without converting the motion to one for summary judgment.  See Bryant v.

Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999).[4]

---

[4] Given these standards, the Court will not consider the numerous
documents that plaintiff filed before the hearing with Judge Evans.  (See Notice
of Filing of Public Records [12]; Notice of Filing of Additional Documents [13].)
Federal Rule of Evidence 201 allows the Court to take judicial notice of official
public records.  As noted above, the Eleventh Circuit has held that, when
considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the
public record, without converting the motion to one for summary judgment,
because such documents are capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned.  See Bryant,
187 F.3d at 1280 (taking judicial notice of public records on file with the
Securities and Exchange Commission); see also Lee v. City of Los Angeles, 250
F.3d 668, 690 (9th Cir. 2001) (stating that courts may take judicial notice of
undisputed matters of public record but may not take judicial notice of disputed
facts stated in public records).  The documents in those filings, which include a

6

### III.   **FACTUAL BACKGROUND**

This matter relates to real property located at 680 Old Ivy Road, Atlanta, Georgia 30342 (the "Property").  (See FAC ¶ 2.)  On March 13, 2006, plaintiff obtained a loan from First Franklin, a division of National City Bank of In. ("First Franklin"), in the principal amount of $481,000.00 plus interest (the "Loan"), and in exchange for the Loan, executed an Adjustable Rate Note (the "Note").  (Id. ¶ 10; see also FAC Ex. B [11-2].)  To secure payment of the Loan, plaintiff executed a Security Deed conveying the Property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as grantee/nominee for First Franklin; the Security Deed was recorded on March 24, 2006, in Deed Book 42215, Page 558, in the Fulton County, Georgia real property records (the "Security Deed").  (See Mot. to Dismiss Ex. A [17-2].)

Thereafter, MERS transferred, sold, assigned, conveyed and set over all its rights, title and interest in and to the Security Deed to defendant Deutsche Bank, as evidenced by that certain Assignment of Security Deed recorded on October 31, 2011, at Deed Book 50535, Page 176, of the Fulton County, Georgia real property

---

civil complaint, a criminal information, press releases and letters between the parties, are not the type of public records of which this Court may take judicial notice, given that they contain disputed facts.

records (the "Assignment").  (See Mot. to Dismiss Ex. B [17-3].)  Defendant SLS

is alleged to be a Colorado entity that conducts loan servicing and debt collection

services for Deutsche Bank in Fulton County, Georgia.  (FAC ¶ 5.)  Plaintiff does

not dispute that she has defaulted on the Note, and admitted at the hearing before

Judge Evans that she has not made a payment on the Loan since July 2011.

(Defs.' Reply 7.)

## IV.    ANALYSIS

### A.    The RESPA/Dodd-Frank Claim Against SLS (Count One)

In Count One, plaintiff alleges violations by SLS of 12 C.F.R. § 1024.41,

which is enforced through Section 6(f) of RESPA, 12 U.S.C. § 2605(f).  12 C.F.R.

§ 1024.41(g) provides:  "If a borrower submits a complete loss mitigation

application after a servicer has made the first notice or filing required by

applicable law for any judicial or non-judicial foreclosure process but more than

37 days before a foreclosure sale," then the servicer is subject to the obligations

of that section.  Id.  In other words, the prohibition on foreclosure during

application review is inapplicable unless the servicer receives a complete

application more than 37 days before a scheduled foreclosure sale.  The

regulation defines a "complete loss mitigation application" as "an application in

connection with which a servicer has received all the information that the servicer

8

requires from a borrower in evaluating applications for the loss mitigation options available to borrower."  Id. § 1024.41(b)(1).

In seeking dismissal of Count One, SLS argues that plaintiff's allegation that "[t]hirty-seven days before any foreclosure sale was scheduled with respect to the mortgage, [SLS] received from Plaintiff a complete loss mitigation application within the meaning of 12 C.F.R. § 1024.41(b)(1)" (see Defs.' Mem. 6, quoting FAC ¶ 57), is a "wholly unsupported allegation which must be disregarded as a legal conclusion."  (Def.'s Mem. 6-7.)  SLS asserts that Exhibit F to the FAC [11-6] shows instead that it received several incomplete loss mitigation applications from plaintiff, as each responsive letter it sent to her states, "You did not provide us with the documents we requested."   (Id. at 7.) Accordingly, SLS contends that, because plaintiff did not submit a completed loss mitigation application within 37 days before the scheduled foreclosure sale, the requirements of 12 C.F.R. § 1024.41(g) are inapplicable and the RESPA claim premised on that regulation must be dismissed.  (Defs.' Mem. 7.)[5]

―――――――――――――――

[5] In its Reply Brief, SLS adds a new argument.  It contends that Count One is premised on plaintiff's assertion that SLS moved "'for a foreclosure judgment or order of sale" in violation of 12 C.F.R. § 1024.41(g), and ignored the appeal process required by 12 C.F.R. § 1024.41(h).  (See Defs.' Reply 3, quoting and

The Supreme Court held in <u>Papasan v. Allain</u>, 478 U.S. 265 (1986), that on a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."   <u>Id.</u> at 286.   However, there is sometimes confusion over what constitutes a factual allegation that should be accepted and a legal conclusion which should be disregarded.   One commentator described this conundrum as follows:

> This occasional judicial reliance on some of the nomenclature of the code pleading regime, such as "facts" and "conclusions," reflects the difficulty of phrasing in abstract terms a rule of construction of pleadings that is relatively simple in actual operation. Although the pleading requirements of Rule 8(a) are very liberal and easily satisfied, many federal courts have made it clear that more detail often is required than the bald statement by the plaintiff that she has a valid claim of some legally recognizable type against the defendant.  Moreover, if the allegations in the complaint, taken as true, do not effectively state a claim for relief, the added assertion by the plaintiff that they do state a claim will not save the complaint.
>
> Basically what this means, and it clearly is borne out by the case law is that the district judge will accept the pleader's description

---

citing FAC ¶¶ 58-59.)  SLS argues that, because no foreclosure sale has occurred, Count One, which requires a foreclosure sale to occur in order for a cause of action to arise, is premature and must be dismissed.  (<u>Id.</u>)  As noted above, the Court will not entertain arguments made for the first time in a Reply Brief.  In any event, the regulation does not appear to require a foreclosure sale, as it states that a "servicer shall not move for foreclosure judgment or order of sale."  12 C.F.R. § 1024.41(g).  Clearly, SLS sought a foreclosure sale here and was stopped only by the injunction issued by Judge Evans.

> of what happened to him or her along with any conclusions that can reasonably be drawn therefrom. However, the court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader's description of what happened, or if these allegations are contradicted by the description itself.

5B Charles A. Wright, Arthur R. Miller & Mary K. Kane, <u>Federal Practice and Procedure</u> § 1357 (3d ed. 1998).

The undersigned finds plaintiff's allegation—that thirty-seven days before any foreclosure sale was scheduled with respect to the mortgage, SLS received from plaintiff a complete loss mitigation application within the meaning of 12 C.F.R. § 1024.41(b)(1)—is not a legal conclusion couched as a factual allegation. It is a factual allegation. The Court thus accepts the pleader's description of what happened. While discovery may show that the allegation cannot be substantiated, it is inappropriate at this time for the Court to disregard it. Therefore, defendant SLS's motion to dismiss Count One should be denied.[6]

Finally, SLS is correct that Dodd-Frank does not support a claim for injunctive relief. See <u>Clark v. Ocwen Loan Servicing, LLC</u>, No. 1:15-CV-659,

---

[6] The Court is unable to conclude from the letters that plaintiff attached to the FAC (Ex. F [11-6]) that SLS ever communicated to her which documents were missing from her loss mitigation application.

2015 WL 6159447, at *6 (W.D. Mich. Oct. 20, 2015.)   However, as SLS concedes, Dodd-Frank can be privately enforced under RESPA in an action for damages and costs.  (Defs.' Mem. 7-8.)  Because plaintiff seeks damages in the FAC (p. 23), there is no basis to dismiss Count One in its entirety simply because it also seeks injunctive relief which is unavailable.   Therefore, defendants' Motion to Dismiss Count One should be denied.

**B.**      **The RESPA Claim Against SLS (Count Two)**

In Count Two, plaintiff alleges that she sent to SLS, as servicer of its Loan, four qualified written requests ("QWR") pursuant to Section 6(e)(1)(B) of RESPA, 12 U.S.C. § 2605(e)(1)(B), written notices asserting errors pursuant to 12 C.F.R. § 1024.35, and written requests for information pursuant to 12 C.F.R. § 1024.36.  (FAC ¶¶ 71-72.)  Plaintiff further alleges that SLS did not respond to any of these requests on a timely basis.  (Id. ¶¶ 73-74.)  She contends that, as a result of SLS's violation of these statutory provisions and regulations, she has suffered actual damages, including the loss of potential buyers of her home due to

12

the unreasonable delays of defendant in providing up-to-date and accurate payoff statements.  (Id. ¶ 77.)[7]

SLS argues that plaintiff failed adequately to plead a RESPA claim because she did not attach to the FAC either the actual letters containing the QWRs she says she sent or SLS's responses to her alleged QWRs.  (Defs.' Mem. 11-12.) Plaintiff responds that she is not required to attach her QWRs as long as she

---

[7] See 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)).").  Section 6(f) of RESPA provides as follows:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1)    Individuals
>
> In the case of any action by an individual, an amount equal to the sum of—
>
>> (A)    any actual damages to the borrower as a result of the failure; and
>>
>> (B)    any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f)(1).

13

pleads facts sufficient to establish a RESPA claim, which she asserts she has done. (Pl.'s Resp. 8.)

In order to state a claim under RESPA for failure to respond to a QWR, a plaintiff must allege facts to show that:  (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed adequately to respond within the statutory period, and (4) the plaintiff is entitled to actual or statutory damages.  Arroyo v. Bank of Am., N.A., No. 1:13-CV-1767-RWS, 2013 WL 3785623, at *3 (N.D. Ga. July 18, 2013); Jones v. Vericrest Fin., Inc., No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *15 (N.D. Ga. Dec. 7, 2011), adopted, 2012 WL 113556 (Jan. 12, 2012).

RESPA defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," which: (1) requests information relating to the servicing of a loan; (2) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (3) states the reasons for the borrower's belief that the account is in error, or provides sufficient detail to the servicer regarding other information sought by the

14

borrower.  See Tonea v. Bank of Am., N.A., 6 F. Supp. 3d 1331, 1346 (N.D. Ga.

2014) (citing 12 U.S.C. § 2605(e)(1)(A)-(B)).[8]

> To establish these requirements were met, the best practice is for a
> plaintiff to attach a copy of the QWR submitted along with their
> complaint.  Where plaintiffs fail to provide a copy of the QWR itself,
> federal courts have routinely held that Plaintiffs must plead facts
> showing that the written request provided the detail necessary to
> qualify under the statute.

Tallent v. BAC Home Loans, No. 2:12-CV-3719-LSC, 2013 WL 2249107, at *4

(N.D. Ala. May 21, 2013).

Ms. Katica did not attach the QWRs, but she has plead facts sufficient to

show that the written requests provided the detail necessary to qualify under

RESPA.  For example, plaintiff alleges that she "sent a letter to SLS dated March

20, 2015, with a qualified written request for records under RESPA ('the First

Qualified Written Request'), wherein Plaintiff disputed the debt, and requested

information and records regarding the payment history, fines, charges, fees and

calculation and breakdown of the debt."  (FAC ¶ 35.)  On April 5, 2015, plaintiff

sent SLS "a second Qualified Written Request for Records under RESPA, which

---

[8] A loan servicer, upon receipt of a QWR, must provide "a written response
acknowledging receipt of the correspondence" within five business days, 12
U.S.C. § 2605(e)(1)(A), and must take action on the QWR within thirty days, id.
§ 2605(e)(2).

15

incorporated by reference the first Qualified Written Request ('the Second Qualified Written Request')."  (Id. ¶ 38.)  "By letter to SLS dated June 19, 2015, Plaintiff renewed her qualified written request, and specifically made a qualified written request for a copy of the Pooling and Servicing Agreement ('the Third Qualified Written Request')."  (Id. ¶ 42.)  Finally, "in August, 2015, Plaintiff sent Counsel for Defendants and Defendants themselves a qualified written request for records under RESPA ('the Fourth Qualified Written Request'), which requested clarification and explanation of the escrow amount and 'corporate advances' items on the June 2015 Payoff Statement."  (Id. ¶ 49.)  Plaintiff summarized these specific allegations in Count Two (id. ¶¶ 71-72.)[9]

---

[9] The cases that SLS cites to support its argument (Defs.' Mem. 11) are inapposite.  For example, in Jones v. Vericrest Financial, Inc., No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *18 (N.D. Ga. Dec. 7, 2011) report and recommendation adopted sub nom. Jones v. Home Am. Mortg. Inc., No. 1:11-CV-2330-TWT, 2012 WL 113556 (N.D. Ga. Jan. 12, 2012), the plaintiff attached the purported QWRs, but neither letter alleged any error in the servicing of the Loan by the defendant.  Moreover, the QWR sought documents covering a broad scope of information beyond that which could be reasonably construed to fall under the definition of the "servicing" of the Loan.  Finally, even assuming the letters were proper QWRs, the servicer responded to them in a timely manner.  (Id. at *17-18.)  The RESPA discussion in DeVary v. Countywide Home Loans, Inc., 701 F. Supp. 2d 1096 (D. Minn. 2010) is dicta.  See id. at 1106 ("At this point, without adequate briefing, the Court is able to form some impressions about DeVary's RESPA claim, but the Court is not in a position to make

SLS also argues that plaintiff failed to allege facts showing that its purported failure to respond to the QWRs caused her to suffer any damage, especially since she did not list her property until August 2015. (Defs.' Mem. 12.) Plaintiff responds that she has alleged damages, including statutory fines, actual damages in the amount of gross proceeds from the sale of her home which she would have been able to apply to any deficiency, emotional distress, lost wages, and damages for physical illness and medical treatment. (Pl.'s Resp. 9.)

A plaintiff must allege either actual damages flowing from the violation or a pattern and practice of defendants' violation of the statute in order to state a claim under RESPA. See Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 836 (11th Cir. 2010) (per curiam); see also 12 U.S.C. § 2605(f)(1). Plaintiff seeks statutory fines as allowed by RESPA, additional damages due to SLS's pattern or practice of non-compliance with these provisions, including actual damages of at least $40,000 (i.e., the gross proceeds which she would have been able to apply to

---

definitive rulings. To guide the parties, though, the Court shares its initial impressions."). Finally, the District Judge adopted the Magistrate Judge's recommended dismissal of the plaintiff's RESPA claim in Dynott v. Nationstar Mortgage, LLC, No. 1:13-CV-1474-WSD, 2014 WL 1028886 (N.D. Ga. Mar. 17, 2014), because the letter he sent did not qualify as a QWR; it requested information about matters well beyond the mere servicing of his loan. Id. at *3.

the outstanding deficiency from the sale of the Property), emotional distress in the amount of $150,000, lost wages of at least $7,500, and physical illness and medical treatment of at least $50,000.  (FAC pp. 26-27.)  At the motion to dismiss stage, plaintiff has alleged facts making it plausible that she suffered actual damages and that SPS committed a pattern of violations.  For these reasons, SLS's motion to dismiss Count Two should be denied.  See Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366, 1373 (N.D. Ga. 2012).

### C.   Non-Judicial Foreclosure Statute Violations (Count Three)

In Count Three, plaintiff alleges violation by both defendants of the Georgia statutes governing non-judicial foreclosure.  The heading of Count Three lists the statutes violated as "O.C.G.A. § 44-14-160 et seq., and O.C.G.A. § 23-2-114."  However, the only statute plaintiff accuses defendants of violating in the text of Count Three is O.C.G.A. § 44-14-162.2.  (See FAC ¶ 80.)  That statute, titled "Notice of foreclosure sale," provides as follows:

> (a)  Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure.  *Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor*, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other

18

address as the debtor may designate by written notice to the secured
creditor.  The notice required by this Code section shall be deemed
given on the official postmark day or day on which it is received for
delivery by a commercial delivery firm.  Nothing in this subsection
shall be construed to require a secured creditor to negotiate, amend,
or modify the terms of a mortgage instrument.

(b)  The notice required by subsection (a) of this Code section shall
be given by mailing or delivering to the debtor a copy of the notice
of sale to be submitted to the publisher.

O.C.G.A. § 44-14-162.2 (emphasis added).[10]

Plaintiff alleges that she received a notice of Notice of Default and Notice
of Intent to Foreclose on March 2, 2015.  (See FAC ¶ 34.)  Plaintiff asserts "upon
information and belief" that the notice of foreclosure "did not identify the name,
address and telephone number of the individual or entity with full authority to
negotiate, amend, and modify all terms of the mortgage with Plaintiff as the
debtor."  (Id. ¶ 81.)  She alleges that neither McCalla Raymer (SLS's counsel),
SLS, nor Deutsche Bank have full authority to negotiate, amend and modify all
terms of the mortgage.  (Id. ¶¶ 83-84.)

_____

[10] Given the language of the statute, plaintiff's allegation that O.C.G.A. §
44-14-162.2 governs foreclosure advertisements, and that this statute requires full
recitation of the language in the Security Deed and Note referencing the power of
sale (see FAC ¶¶ 80-81), is inaccurate.

Because plaintiff states that she received the notice of foreclosure, her allegations as to its contents should not have been made on information and belief. See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2nd Cir. 2010) ("The Twombly plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant . . ., or where the belief is based on factual information that makes the inference of culpability plausible.'") (citations omitted). Plaintiff could have attached a copy of the notice.

Similarly, because defendants mailed notice of the initiation of proceedings to exercise a power of sale in a security deed to plaintiff, they could have attached a copy to their Motion. That is the type of document of which this Court may take judicial notice. However, defendants did not submit that document to the Court, but they argue that a notice can list the lender's attorney (even if he lacks full authority to negotiate, amend, and modify all terms of the mortgage with the debtor), or that a notice can list the servicer (like SLS), who has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor. (Defs.' Mem. 14-15.) The problem with defendants' arguments is that the Court does not know who was listed on the foreclosure notice—SLS's attorney or SLS.

20

Given that neither party attached the relevant document, the Court cannot judge the notice's compliance with the statute.  Thus, without a copy of the notice, the undersigned has no basis to rule, as a matter of law, that defendants complied with O.C.G.A. § 44-14-162.2.

In any event, because no foreclosure sale has occurred, plaintiff's claim must necessarily be interpreted as one for wrongful attempted foreclosure. Mayrant v. Deutsche Bank Trust Co. Ams., No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011).  But, plaintiff is in default on her obligations under the Loan, and in fact, has not made a payment in almost four and one-half years.  "Failure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims."  White v. Bank of Am., N.A., No. 1:12-CV-3834-WSD, 2013 WL 1963786, at *3 n.11 (N.D. Ga. May 10, 2013),[11] reconsideration denied, No.

─────────────────

[11] White summarized the following cases in support of the above holding:

Harvey v. Deutsche Bank Nat. Trust Co., No. 1:12-CV-1612-RWS, 2012 WL 3516477, at *2 (N.D. Ga. Aug.14, 2012) ("When the borrower cannot show that the alleged injury is attributable to the lender's acts or omissions, the borrower has no claim for wrongful foreclosure."); Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 601 S.E.2d 842 (Ga. Ct. App. 2004) (plaintiff's injury was "solely attributable to its own acts or omissions both before and after

1:12-CV-3834-WSD, 2013 WL 6796460 (N.D. Ga. Dec. 23, 2013) aff'd sub nom.

White v. Bank of Am. Bank, NA, 597 F. App'x 1015 (11th Cir. 2014); accord

Everidge v. Wells Fargo Bank, N.A., No. 5:12-CV-497 (LJA), 2015 WL 5786738,

at *20 (M.D. Ga. Sept. 29, 2015).

---

the foreclosure" because it defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale); Ezuruike v. Bank of New York Mellon, No. 1:11-CV-4030-JEC, 2012 WL 3989961, at *1-2 (N.D. Ga. Sept. 11, 2012) (dismissing attempted wrongful foreclosure claim where "plaintiff makes no plausible allegation that he was not in default and therefore a foreclosure notice suggesting that he was could not falsely impugn the plaintiff's financial condition"); Peterson v. Merscorp Holdings, Inc., No. 1:12-CV-00014-JEC, 2012 WL 3961211, at *5 (N.D. Ga. Sept. 10, 2012) (plaintiffs failed to state a claim for attempted wrongful foreclosure where they alleged only that defendant misrepresented itself as the secured creditor on foreclosure notice); Austin v. Bank of Am., N.A., No. 1:11-CV-3346-RWS, 2012 WL 928732, at *1 (N.D. Ga. Mar. 16, 2012) (dismissing claim for wrongful attempted foreclosure where plaintiffs admitted they were in default and did not allege that defamatory statements were published against them); Sellers v. Bank of Am., Nat'l Ass'n, No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga. May 21, 2012) (dismissing attempted wrongful foreclosure claim; while plaintiffs alleged that defendants lacked authority to foreclose, plaintiffs failed to allege sufficient facts to show that they suffered any damage as a result).

2013 WL 1963786, at *3 n.11.

As defendants point out (see Defs.' Reply 10), they made this argument in their initial brief and plaintiff failed to respond to it.  "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."  Kramer v. Gwinnett Cty., Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga.), aff'd, 116 F. App'x 253 (11th Cir. 2004) (table decision). Because plaintiff failed to respond to defendants' argument that her attempted wrongful foreclosure claim is without merit, Defendants' Motion to Dismiss Count Three should be granted.

### D.  FDCPA Claim Against SLS (Count Four)

Count Four alleges that SLS violated the FDCPA by:

> a.  Contacting Plaintiff as the debtor at unusual times and places, including but not limited to, hiring or employing agents to personally approach the debtor at her home on multiple occasions to annoy, harass, bully and scare Plaintiff, which is [] a violation of § 1692(a)(1),[12] harassment and abuse in violation of § 1692d(1), false and misleading representations regarding the purpose of such personal visits; unfair practices in violation of § 1692f; and improper notices from the unmarked vehicles agents and other agents, section 1692f(8).

---

[12] There is no Section 1692(a)(1).  Section 1692a(1) defines the term "Bureau" to mean the Bureau of Consumer Financial Protection.  See 15 U.S.C. § 1692a(1).  Accordingly, the Court will not address any claim under this section.

23

b.  Harassing Plaintiff as the debtor by repeatedly and continuously sending Plaintiff hundreds of duplicate letters and notices, in violation of § 1692d;

c.  Failing to provide verification of the debt, after Plaintiff disputed the debt, in violation of § 1692g(b).

d.  Making false and misleading representations in letters to Plaintiff, and in notes hand delivered to Plaintiff by unidentified persons in an unmarked cars, including that such person was with Clayton County or otherwise a legal authority, and that legal action may be taken, violating §§ 1692e(1), (4), (5), and (9).

(FAC ¶ 92.)  As reflected above, plaintiff alleges violations of FDCPA sections 1692d(1); 1692e(1), (4), (5), and (9); 1692f; and 1692g(b).

Defendant SLS argues that plaintiff has failed to state a claim against it under the FDCPA, and in the alternative, asserts that Count Four is vague and ambiguous and requests that plaintiff be ordered to provide a more definite statement of her claim under Federal Rule of Civil Procedure 12(e).  (Defs.' Mem. 18-23.)  Plaintiff spends only one page of the response defending her FDCPA claim.  (See Pl.'s Resp. 13-14.)  She contends, in summary fashion, that paragraphs 32-37 of the FAC are sufficiently pled to sustain a FDCPA claim.  (Id. at 13.)

"The FDCPA was passed to eliminate abusive debt collection practices, to ensure that debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent state action in protecting consumers against debt collection abuses." Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1312-13 (11th Cir. 2015) (internal quotation marks omitted). "In accordance with its stated purposes, the FDCPA bans certain debt collection practices and allows individuals to sue debt collectors who fail to comply with the Act." Id. at 1313. Under the FDCPA, a "debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Plaintiff alleges that SLS is a debt collector and subject to the FDCPA. (FAC ¶¶ 5, 89, 91.)[13] The Court considers below each section of the FDCPA that plaintiff accuses SLS of violating.

---

[13] SLS cites Humphrey v. Washington Mutual Bank, F.A., No. 1:06-CV-1367-JOF, 2007 WL 1630639, at *2 (N.D. Ga. June 1, 2007), for the proposition that the FDCPA applies only to debt collectors, and not to creditors or mortgage servicers. (Defs.' Mem. 18-19.) As noted in Davidson v. Capital One Bank (USA), N.A., 44 F. Supp. 3d 1230 (N.D. Ga. 2014), aff'd, 797 F.3d 1309 (11th Cir. 2015), the Humphrey Court found that the defendant was not a debt collector because it was attempting to collect its own debt. Id. at 1242 n.15. Thus, "[i]t is unclear whether the Humphrey Court's decision was based upon the second prong

### 1.   <u>Section 1692d(1)</u>

Section 1692d(1) provides in relevant part as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)   The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

15 U.S.C. § 1692d(1).

---

of § 1692a(6) or based upon the incorrect notion that one cannot be both a 'creditor' and a 'debt collector.'"   <u>Id.</u>

SLS also cites <u>Warren v. Countrywide Home Loans, Inc.</u>, 342 F. App'x 458, 460 (11th Cir. 2009) (per curiam), for the proposition that enforcement of a security interest through the foreclosure process is not debt collection under the FDCPA, except for purposes of 15 U.S.C. § 1692f(6).   (Defs.' Mem. 19.)   SLS argues that <u>Reese v. Ellis, Painter, Ratteree, and Adams, LLP</u>, 678 F.3d 1211 (11th Cir. 2012), does not undermine <u>Warren</u> because of the following footnote from <u>Reese</u>.   <u>See id.</u> at 1218 n.3 ("Because we hold that the Ellis law firm's demand for payment on the promissory note was debt-collection activity within the meaning of the FDCPA, we do not reach the question of whether enforcing a security interest is itself debt-collection activity covered by the statute.   That is, we do not decide whether a party enforcing a security interest without demanding payment on the underlying debt is attempting to collect a debt within the meaning of § 1692e.").   Given that this case is before the Court on a motion to dismiss, there is no way to determine whether SLS was a party enforcing a security interest without demanding payment on the underlying debt.

26

A fair reading of the FAC reveals no facts to support any plausible claim that SLS used or threatened the use of violence against plaintiff; thus, she fails to state a claim under Section 1692d(1).  However, plaintiff has alleged facts which support a plausible claim for violation of the opening paragraph of Section 1692d (i.e., "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.").  For example, SLS "flooded Plaintiff with more duplicate letters, correspondence, notices of debt, and notices changing SLS' point of contact." (FAC ¶ 32.)  Additionally, plaintiff alleges that on several occasions SLS sent persons in unmarked cars, with no identification, to wait in her driveway, and that these persons approached her, refused to provide identification, but yelled that it was urgent for her to call her mortgage company, and handed her notes [14] directing her to call a number, and even hung those notes on her door knob.  (Id.) On one occasion, persons in the unmarked car initially blocked plaintiff from leaving her home, and then followed her as she left the driveway.  (Id.)  Because

_____

[14] These notes are attached to the FAC.  (See FAC Ex. G [11-7], at 1-3.) One urges the recipient to "contact your mortgage servicer immediately."  (Id. at 1.)  Handwriting on one of the other notes states that these persons have come to "inspect [plaintiff's] property and to tell [her] to call SLS."  (Id. at 2.)

this alleged conduct, if proved, could be harassing, oppressive or abusive, SLS's

Motion to Dismiss any claim under Section 1692d should be denied.

### 2.   Section 1692e

Section 1692e provides in relevant part as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)   The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

. . .

(4)   The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5)   The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(9)   The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

28

15 U.S.C. §§ 1692e(1), (4), (5), (9).

A fair reading of the allegations of the FAC shows no plausible violations of any of the above-quoted provisions of the FDCPA.  The bare allegation that some unidentified person who came to plaintiff's home was from Clayton County is insufficient to violate Section 1692e(1).   Accordingly, SLS's Motion to Dismiss any claims under Section 1692e should be granted.

### 3.    Section 1692f

Section 1692f provides in relevant part as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2)    The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3)    The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4)    Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5)    Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6)    Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A)    there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B)    there is no present intention to take possession of the property; or

(C)    the property is exempt by law from such dispossession or disablement.

(7)    Communicating with a consumer regarding a debt by post card.

(8)    Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f.

As noted above, plaintiff does not allege a violation of any one of the eight specific subsections of Section 1692f. With regard to the introductory paragraph, she alleges no facts which plausibly constitute an unfair or unconscionable means

to collect or attempt to collect any debt.  As before, a fair reading of the FAC shows no plausible violations of any of the above-quoted provisions of the FDCPA.  Accordingly, SLS's Motion to Dismiss any claims under Section 1692f should be granted.

### 4.   Section 1692g(b)

Plaintiff alleges a violation of Section 1692g(b).  She asserts that defendants failed to provide verification of the debt after she disputed it.  (FAC ¶ 92c.)  To address this claim, subsections (a) and (b) of Section 1692g must be considered.  These provisions provide as follows:

(a)    Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    (1)    the amount of the debt;

    (2)    the name of the creditor to whom the debt is owed;

    (3)    a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4)    a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the

debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)   a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b)   Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.   Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C, § 1692g(a)-(b).

Plaintiff fails to allege when she received the initial communication from SLS regarding collection of the debt (and failed to attach any such

32

communication to the FAC); thus, there is no way to determine if plaintiff timely disputed the debt within the thirty-day period, which would have triggered defendants' verification duty.   In fact, plaintiff does not even allege that the request for verification was timely.   See Agu v. Rhea, No. 09-CV-4732(JS)(AKT), 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) ("Plaintiff's Section 1692g(b) claims fail because, although he alleges that he repeatedly requested that the Collection Defendants verify the questioned debts, he does *not* allege that he made any of these requests within the thirty day time window that Section 1692(b) provides.   Without such factual pleading, it is entirely speculative, and not 'plausible,' that Plaintiff has a cognizable claim.   After all, for all the Court knows, Plaintiff could have made only *untimely* verification requests, which the Collection Defendants then properly ignored.").   The undersigned concludes that plaintiff fails to state a claim under Section 1692g(b).   Accordingly, Defendants' Motion to Dismiss any claims against them under Section 1692g(b) should be granted.

### E.   **The TILA Claim (Count Six)**

Plaintiff alleges that this is an action for restitution and rescission under TILA, 15 U.S.C. § 1640(e).   (FAC ¶ 93.)   Following completion of a forensic audit in February 2011, she sent First Franklin a Notice of Rescission on February

17, 2011, outlining multiple TILA violations.  (Id. ¶¶ 12-13, 95.)  Defendants did not respond to that Notice of Rescission.  (Id. ¶ 14.)  Plaintiff further alleges that, one year later, in February 2012, a state/federal joint banking investigation revealed that her mortgage was in a pool of securitized loans which was subject to fraudulent servicing during the years in question.  (Id. ¶¶ 17-18 & Ex. A-C.)  She alleges that defendants are liable under TILA as assignees of First Franklin.  (Id. ¶ 96.)   She contends that, due to the ongoing pattern and practice of active concealment, and the concealment of fraudulent servicing and loss mitigation, the TILA claim should be equitably tolled.  (Id. ¶¶ 97-99.)[15]

Defendants seek dismissal of the TILA claim on statute of limitations grounds.[16]  Since the Loan closing occurred in March 2006, more than nine years before the filing of the Complaint, defendants contend that any claim for damages

---

[15] "[T]he statute of limitations in TILA is subject to equitable tolling." Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 708 (11th Cir. 1998).  The burden is on the plaintiff to show that equitable tolling is warranted.  Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993).  "Federal courts have typically extended equitable relief only sparingly."  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

[16] Defendants initially argued that a residential mortgage transaction like this one is exempt from TILA's right of rescission (Def.'s Mem. 25, citing 15 U.S.C. § 1635(e)(1)), but made no such argument in their Reply Brief after plaintiff showed that the Loan here was a refinance with a new creditor.  (Pl.'s Resp. 14-15.)

under TILA is barred by the one-year statute of limitations. (Defs.' Mem. 24, citing 15 U.S.C. § 1640(e).) They also assert that a borrower's right of rescission based upon an alleged TILA violation expires three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first. (Id., citing 15 U.S.C. § 1635(f)). Because plaintiff alleges that she sent her Notice of Rescission in February 2011, a date more than three years after the closing of the Loan, defendants assert that her rescission claim is also time barred. (Id. at 24-25.) Defendants argue that plaintiff has presented no factual basis to support her contention that the statute of limitations should be equitably tolled. (Defs.' Mem. 25-26.)

As noted above, plaintiff alleges that this is an action for rescission and restitution under TILA. (FAC ¶ 93, citing 15 U.S.C. § 1640(e).) Although Section 1640(e) gives United States District Courts jurisdiction over suits for alleged TILA violations, a plaintiff must allege which provision(s) of TILA was violated. The FAC alleges that defendants violated the following statutory provisions—15 U.S.C. §§ 1637(a),[17] 1666, 1661a, and 1666i. (FAC ¶ 95c.)

_____

[17] That seems to be a typographical error. The more pertinent provision seems to be 15 U.S.C. § 1637a, which deal with disclosure requirements for open

However, sections 1666, 1661a, and 1666i are not part of TILA, but are part of the Fair Credit Billing Act ("FCBA").  "The FCBA's protections do not extend to closed-end credit, such as the mortgage loan at issue in this case."  Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012).

Section 1637a is part of TILA, but it deals with disclosure requirements for open end consumer credit plans.  An "open end consumer credit plan" is "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."  15 U.S.C. § 1602(j).  The typical example of an open end credit plan is a credit card account.  See Canaday v. Household Retail Servs., Inc., 119 F. Supp. 2d 1258, 1262 (M.D. Ala. 2000).  As noted in Stroman, 852 F. Supp. 2d at 1374, a mortgage is not an open end consumer credit plan.  Because plaintiff has failed to allege any viable TILA claims, Count Six should be dismissed.

In any event, even if plaintiff had asserted a TILA claim arising out of her residential mortgage transaction (such as alleged violations of 15 U.S.C. § 1639, or 15 U.S.C. §§ 1639a through 1639h), it would be barred by the statute of

---

end consumer credit plans secured by a consumer's principal dwelling.

36

limitations.   As stated <u>supra</u> note 15, equitable tolling can apply to avoid the effects of a statute of limitations.   "In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control."   <u>Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1286-87 (11th Cir. 2002).

To qualify for the protections afforded by equitable tolling, a plaintiff must show: (1) the defendant engaged in a course of conduct designed to conceal evidence of its alleged wrongdoing; (2) plaintiff was not on actual or constructive notice of that evidence; and (3) plaintiff exercised due diligence.   <u>Bryant v. Mortg. Capital Res. Corp.</u>, 197 F. Supp. 2d 1357, 1367 (N.D. Ga. 2002), <u>on reconsideration in part,</u> No. 1:00-CV-671-BBM, 2002 WL 34720249 (N.D. Ga. May 31, 2002).   With regard to the third prong, the "actual exercise of diligence is irrelevant because the standard is an objective one."   <u>Morton's Market, Inc. v. Gustafson's Dairy, Inc.</u>, 198 F.3d 823, 836 (11th Cir. 1999).   In deciding whether the statute should be tolled, it must be determined whether a reasonably diligent plaintiff would have discovered the fraud.   <u>Id.</u>

Like plaintiffs in many other suits brought to forestall foreclosure, plaintiff alleges that she did not discover the alleged fraud until after she received the results of a so-called forensic audit.   However,

37

> "Courts have denied tolling . . . [w]here a plaintiff relies . . . on the same allegations of fraud which constitute the TILA violation (such as failing to disclose certain finance charges) to prove fraudulent concealment [explaining that] if failure to make TILA disclosures also tolled the limitations period for pursuing TILA claims, then the statute of limitations would be rendered meaningless because those non-disclosures are the very essence of a TILA violation in the first place."

Malally v. BAC Home Loan Servicing, LLC, No. 3:10-CV-0074-JTC-JFK, 2010 WL 5140626, at *7 (N.D. Ga. Oct. 8, 2010) (quoting Carillo v. Bank of New York, No. 09-61642-CIV, 2009 WL 5708925, at *3 (S.D. Fla. Dec. 22, 2009) (internal quotations and citation omitted), report and recommendation adopted, No. 3:10-CV-74-WBH, 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010)); see also Lefont v. SunTrust Mortg., Inc., No. 2:10-CV-036-RWS-SSC, 2011 WL 679426, at *6 (N.D. Ga. Jan. 27, 2011) (rejecting tolling argument based on plaintiff's contention that she was unaware of the alleged fraud until receipt of a forensic audit), report and recommendation adopted, No. 2:10-CV-000036-RWS, 2011 WL 674749 (N.D. Ga. Feb. 16, 2011).  Therefore, Defendants' Motion to Dismiss Count Six (TILA) should be granted.

**F.      The Breach of Contract Claim (Count Seven)**

In   Count   Seven,   plaintiff   alleges   that   defendants   breached   the   three

contracts at issue (i.e., the Security Deed, Loan, and Note) and a Servicing and

Pooling Agreement ("SPA") that she has not seen by:

> (a) not rescinding the loan; (b) not following the material terms and
> conditions  for  evaluation  for  mitigation  loss  prior  to  foreclosure
> under  the  Servicing  and  Pooling  Agreement;  and  (c)  by  depriving
> Plaintiff  of  her  statutory  rights  to  be  notified  of  the  identities  of
> persons  with  full  authority  to  revise,  modify  or  amend  all  terms  of
> the mortgage.

(FAC ¶ 103; <u>see also</u> <u>id.</u> ¶ 27 (alleging defendants have refused to disclose the

SPA).)   Although plaintiff has not seen the SPA, she alleges that she is a direct

and intended beneficiary of it.  (<u>Id.</u> ¶ 104.)  Finally, plaintiff generally alleges that

she notified defendants of the "material breach," that defendants failed to cure it,

and that she suffered actual damages as a result.  (<u>Id.</u> ¶¶ 104-105.)

In support of their Motion, defendants contend that plaintiff's breach of

contract claim is fatally deficient because she fails to allege what provisions they

supposedly breached.  (Def.'s Mem. 27.)  Defendants also contend that plaintiff

cannot establish damages or that any alleged breach by them caused her damages.

(<u>Id.</u> at 27-28.)

Plaintiff responds that foreclosure on a property without the right to do so

may give rise to a claim for breach of contract, in addition to a claim for wrongful

foreclosure.  (Pl.'s Resp. 17.)  Plaintiff argues that defendants did not have the contractual right to exercise the power of sale, and that a morass of servicers, investors, and secured creditors has thrown into confusion what rights defendants actually have under the contracts.  (<u>Id.</u> at 17-19.)  Plaintiff also contends that the Security Deed provides for the power of sale to pay all sums due; however, the amount due on the mortgage is in dispute.  (<u>Id.</u> at 18.)  Therefore it is not clear that defendants may exercise any power of sale.  (<u>Id.</u>)

To assert a claim for breach of contract under Georgia law, a plaintiff must show a valid contract, a material breach of its terms, and resultant damages to the party who has the right to complain about the contract being broken.  <u>Bates v. JPMorgan Chase Bank, NA</u>, 768 F.3d 1126, 1130 (11th Cir. 2014); <u>Duke Galish, LLC v. Manton</u>, 707 S.E.2d 555, 559 (Ga. App. 2011).

With regard to the specific claims set forth in paragraphs 103(a) and (c) of the FAC, plaintiff has not cited or explained what provisions of the Security Deed, Loan, or Note defendants allegedly violated by not rescinding the Loan, and has not alleged that any of those contracts incorporated a statutory right permitting her to bring a private right of action for violation of state or federal law. Moreover, as discussed <u>infra</u> Part IV.C, the Court interprets plaintiff's failure to

40

respond to that portion of the Motion as an indication that defendants' argument is unopposed.  See Kramer, 306 F. Supp. 2d at 1221.

With regard to paragraph 103(b), plaintiff has not shown that she has standing to bring a claim under the SPA, as her assertion that she is a direct and intended beneficiary of that contract is conclusory and not supported by Exhibit F as she alleges.  (Compare FAC ¶ 104, with id. Ex. F [11-6].)  Tellingly, courts have held that borrowers like plaintiff lack standing to challenge noncompliance with such securitization agreements.  See e.g., Blake v. Bank of Am., N.A., 845 F. Supp. 2d 1206, 1213 (M.D. Ala. Feb. 27, 2012) (explaining that the servicer and issuer intended the SPA to benefit themselves, and that the loss mitigation provision was designed to reduce their agency costs by imposing a contractual duty on a servicer who gets paid for performing).

Finally, plaintiff's general argument that defendants did not have a contractual right to exercise the power of sale fails because they have yet to do so. See Bates, 768 F.3d at 1133 & n.8 (no contractual damages where the defendant merely threatened to exercise the power of sale; rather, the alleged damages fall under attempted wrongful foreclosure claim).  Thus, the undersigned concludes that plaintiff has failed to state a claim for breach of contract, including with regard to the Security Deed, Loan, and Note, and has failed to allege sufficient

41

facts to suggest that she has standing to invoke the terms of the SPA. Accordingly, Defendants' Motion to Dismiss Count Seven should be granted.

## V.    CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Complaint [17] be **GRANTED IN PART and DENIED IN PART**.  With regard to the First Amended Complaint, the District Court should **DISMISS WITH PREJUDICE** claims alleged in Counts Three (Non-Judicial Foreclosure), Four (FDCPA, asserted under 15 U.S.C. §§ 1692e, 1692f, and 1692g(b)), Six (TILA), and Seven (Breach of Contract). However, claims alleged in Counts One (Dodd-Frank), Two (RESPA), and Four (FDCPA, asserted under 15 U.S.C. § 1692d) should be allowed to proceed.

**SO RECOMMENDED**, this 1st day of December, 2015.


_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE